UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INGRID WALKER,                    :
    Plaintiff,              :
                            :
v.                               :          3:02CV199(AHN)
                            :
THE ACCESS AGENCY,               :
    Defendant.              :

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ingrid Walker ("Walker") brings this action
against her former employer, The Access Agency ("Access"),
alleging statutory violations under the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. § 621, the Federal Family and
Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the Connecticut
Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-
60. Walker also alleges a state law claim for negligent
infliction of emotional distress.

Access now moves for summary judgment on all counts of
Walker's complaint. For the following reasons, Access's motion
[dkt. # 22] is granted in part and denied in part.

### FACTS

The evidence submitted to the court reflects the following
undisputed material facts construed in the light most favorable
to Walker.

Access is a non-profit agency providing community services
in Connecticut, particularly energy assistance, child and adult
care food programs, job counseling, and an emergency shelter.

The majority of Access's operating revenue comes from grants and public contracts for those services.

Walker was employed by Access from June 20, 1977, until she was laid off on April 20, 2001, at the age of fifty-seven. She was initially hired as a program developer, but thereafter worked as the Director of Planning and Programming Development and as the Interim Executive Director. From 1993 to November 2000, Walker was employed as the Director of Economic Development.

In May 2000, Access discontinued its early childhood services which, at that time, constituted over forty percent of its operating budget. As a result, Access laid off some of its employees. See Access's CHRO Layoff Form, Def. Ex. 1-D (reflecting three additional layoffs and one voluntary designation due to a loss of funding for the same period). Access also retained an outside accounting firm, Disanto Bertoline & Co. ("Disanto"), to prepare a financial forecast and make recommendations about cutting costs and increasing revenue. Disanto's plan, issued on October 31, 2000, called for eliminating central administrative staff positions, including the Director of Economic Development position held by Walker.

On November 7, 2000, Anita Connor ("Connor"), then Acting Executive Director, informed Walker that her position was being terminated and that she was being laid off because of the restructuring. Walker also learned that a less senior employee, Robyn Denson ("Denson"), who was less than half Walker's age,

2

would remain in the subordinate position of Director of Program Development. Upon learning this, Walker became very upset. Even though Denson's job duties were different from Walker's, Walker felt that she was being replaced by a younger and less experienced employee. Walker told Connor that the decision was discriminatory and that she planned to consult an attorney.[1]

The next day, November 8, 2000, Connor told Walker that Access would layoff Denson and that Walker could take her place in the program development position, at the comparatively reduced salary it paid.[2] Walker asked to have until November 17 to consider the offer. When Walker did not have a definite answer on that date, she and Connor agreed to meet on November 21. Walker, however, failed to keep the November 21 appointment because she went on medical leave that very same day. Walker submitted a medical note that indicated she was suffering from anxiety and depression, was taking three different prescription medications, and required monitoring. Upon learning of Walker's leave, Connor told the administrative services director, Nora

---

[1] While neither party is certain of Walker's exact statement to Connor, see Pl. Loc. Rule Stat., Dep. of Ingrid Walker at 40; Def. Ex. 2, Connor Dep. at 130-31, for purposes of this motion the court construes any ambiguity in favor of Walker and assumes that she made an explicit complaint of age discrimination.

[2] Access's payroll records for the period ending November 4, 2000, show that Walker earned a gross biweekly salary of $2,122, while Denson earned $1,538 for the same period. See Def. Ex. 1-I.

Gregonis ("Gregonis"), that she did not believe Walker was sick.
Despite Connor's personal beliefs, Walker qualified for short-
term disability benefits from December 4, 2000, to February 28,
2001.

On November 28, 2000, Connor formally notified Walker by
letter that her position as Director of Economic Development
would terminate on December 1, 2000.  On November 30, 2000,
Walker informed Connor that she would accept the position of
Director of Program Development and that she wanted to discuss
the job when she returned to work.

Walker's medical leave ended on February 28, 2001, but she
was having second thoughts about returning to work because she
believed that her relationship with Connor was permanently
destroyed.  Thus, Walker retained an attorney to negotiate a
severance package in lieu of taking the program development
position.  See Def. Ex. 1-S.  Both parties agreed that Walker
would not return to work while negotiations were ongoing.
Ultimately, the parties were unable to reach an agreement and
Walker was scheduled to return to work on March 15, 2001.
However, due to continued financial constraints,[3] Access was
unsure whether the program development position would remain.

---

[3] In particular, Access was notified on April 4, 2001, that
its services contract with Generations Family Health Center, Inc.
("Generations"), who was a major client, would not be renewed
after June 30, 2001.  See Def. Ex. 1-Q.

4

Thus, the parties agreed that Walker would not return to work until Access was certain it would keep the position in place. See Def. Ex. 3.

On April 17, 2001, Access notified Walker in writing that, effective April 20, 2001, the entire development department, including the program development position that Walker had accepted, would be eliminated.  See Def. Ex. 1-O.  In its place, Access's new Executive Director, Rocco Tricarico ("Tricarico"), would take responsibility for most of the development department's functions.  In addition, Access retained Denson, who had been continually working as Director of Program Development while Walker was on leave, to complete the department's existing projects by the end of that fiscal year, June 30, 2001.

On June 30, 2001, Denson was laid off as a full-time employee.  However, pursuant to a job proposal for employment that Denson had submitted on April 16, 2001, at Tricarico's behest, Denson was simultaneously re-hired as an independent contractor to write grants.  See Pl. Ex., Dep. of Rocco Tricarico at 23-24.  Her duties in that position remained substantially the same as they had been in the program development position, see id. at 28, but her compensation was substantially reduced; she did not receive benefits and worked an average of only ten to fifteen hours per week.  See Pl. Ex., Dep. of Robyn Denson at 33-34.

5

In January 2002, when new funding became available, Access hired Denson on a full-time basis, again as Director of Program Development -- the same position that Access eliminated in April 2001 when it discharged Walker.  See Pl. Ex., "New Hire Form."

## STANDARD

Summary judgment will be granted if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the nonmovant.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the nonmoving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Where, as here, the nonmovant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing to an absence of evidence to support an essential element of the nonmovant's case.  See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d Cir. 1999) (citing cases).

DISCUSSION

I.   Age Discrimination

Walker alleges that Access violated the ADEA when it laid

her off, but retained Denson, a much younger and less experienced

employee.  More specifically, Walker argues that Access's

decision to terminate her from the economic development position

and to later eliminate the entire development department, when

viewed in the context of Access's concomitant decision to retain

Denson as an independent contractor, as well as its subsequent

rehire of Denson as a full-time employee in January 2002,

constitutes age discrimination in violation of the ADEA and the

CFEPA.[4]  Access argues that summary judgment is appropriate

because Walker cannot establish either a prima facie case of age

discrimination, or that the reason it has articulated for its

actions is pretextual.

Under the ADEA, it is "unlawful for an employer . . . to

fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment,

because of such individual's age."  29 U.S.C. § 623(a)(1).  ADEA

claims are analyzed under Title VII's burden-shifting framework

---

[4] Because Connecticut law in relevant part follows the ADEA,
see Levy v. Comm'n on Human Rights & Opportunities, 236 Conn. 96,
103, 107-09 (1996), the court considers Walker's CFEPA claim
together with her ADEA claim on the basis of federal precedent.

set out in <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

See <u>Schnabel v. Abramson</u>, 232 F.3d 83, 87 (2d Cir. 2000).

First, a plaintiff must establish a prima facie case of age

discrimination.  If the plaintiff makes out a prima facie case,

the burden shifts to the employer to articulate a legitimate,

nondiscriminatory business rationale for its action.  If the

employer articulates such a reason, the burden then shifts back

to the plaintiff to show that the employer's proffered reason is

mere pretext and that age was the true motivating factor.  <u>See</u>

<u>id.</u>

A.    <u>Prima Facie Case</u>

In order to establish a prima facie case of age

discrimination, Walker must show (1) that she was within the

protected age group, (2) that she was qualified for the positions

at issue, (3) that she was terminated from those positions, and

(4) that the terminations occurred under circumstances giving

rise to an inference of age discrimination.  <u>See</u> <u>id.</u>  While there

can be no dispute that Walker satisfies the first three

requirements, it is not equally clear that she can establish that

the challenged employment decisions in November 2000 and April

2001 give rise to an inference of discrimination.  Nonetheless,

because the court resolves all factual ambiguities here in

Walker's favor, it finds sufficient evidence to establish a prima

facie case of age discrimination.

First, Walker falls within the protected age group because she was fifty-seven when she was laid off.  See 29 U.S.C. § 631(a) (setting the threshold age at forty years old).  Second, Walker's twenty-three years at Access and her work performance evaluations, see Def. Ex. 1-A, demonstrate that she was qualified to serve as both the Director of Economic Development as well as the Director of Program Development.  See Schnabel, 232 F.3d at 87 (finding it significant that the plaintiff had extensive experience in his field).  Third, Walker suffered adverse employment actions when she was demoted and subsequently laid off.  Fourth, a jury could find that Access had effectively retained a twenty-six-year-old to perform all or most of Walker's duties after she was laid off in April 2001, and thus Walker's layoff occurred under circumstances giving rise to an inference of age discrimination.

B.    Access's Articulated Reason for Its Termination of Walker's Employment

Access presents three legitimate, nondiscriminatory reasons for eliminating Walker's economic development position and the development department altogether:  1) financial constraints caused by decreased funding; 2) Walker's prolonged absence from the agency; and, 3) serious questions about Walker's commitment and desire to continue working for Access in a significantly reduced salary.  The court finds that the record on summary judgment corroborates Access's arguments.

9

First, Access has submited a plethora of evidence demonstrating that its financial troubles began as early as April 2000 and culminated a year later, in April 2001, when it lost a major services contract with Generations for the following fiscal year.  Due to its financial problems, Access decided to eliminate the entire development department and transfer the bulk of the department's duties to Tricarico, its new executive director. Because the program development position was a part of that department, the position, which Walker had accepted in November 2000 but had not worked in because of her medical leave, was eliminated and Walker was laid off.

Second, the summary judgment record demonstrates that Access had nondiscriminatory business reasons for permitting Denson to continue working for Access after Walker was terminated on April 20, 2001.  Specifically, Denson was familiar with ongoing projects that needed to be completed by the June 30, 2001, deadline because she had been continuously working in the program development position while Walker was on medical leave.  Then, from June 30, 2001, until January 2, 2002, Denson worked at Access as an independent contractor, with hours averaging only ten to fifteen hours per week.  When new funding became available in January 2002, Denson was rehired on a full-time basis. Walker, in turn, presents no evidence that creates a factual dispute or that gives rise to an inference of Access's intentional age-based discrimination.

10

Third, the court finds that based on the summary judgment record, Access had a legitimate, nondiscriminatory basis for questioning Walker's desire and commitment to work in the program development position.  Although the summary judgment record indicates that Walker accepted the lesser program development position that Denson had been working in, Walker did so with obvious reluctance.  That is, Walker was offered the position in lieu of a layoff on November 8, and a week later, on the very same day that she had promised Connor a response, November 21, 2001, Walker went on medical leave until February 28, 2001. Walker did not affirmatively accept the position until nearly a month after Connor made the offer.  Also, Tricarico testified at his deposition that it was Access's understanding that Walker could have resumed her employment at Access at any time and Denson would have been laid off.  See Pl. Ex., Tricarico Dep. at 83.  But, once Walker's medical leave came to an end, rather than return to work and replace Denson in the program development position, Walker retained an attorney to negotiate a severance package.  Walker, in turn, presents nothing to negate Access's belief that she was neither committed nor motivated to return to Access in the program development position.  And, Walker cannot seriously contend that the ADEA, in light of its prohibition against age-based discrimination, also makes it unlawful for an employer to exercise broad discretion in reaching legitimate business goals, such as ensuring financial feasibility and hiring

11

committed employees.  That is simply not the case.

C.    Pretext

Because Access has articulated legitimate, nondiscriminatory reasons for laying off Walker in April 2001, the burden shifts back to Walker to show that Access's proffered reasons are pretextual.  See, e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001); Schnabel, 232 F.3d at 88.  Walker principally relies on Access's continued employment of Denson -- first as an independent contractor and then as a full-time employee -- beyond the fiscal year ending June 30, 2001.  Walker also asserts that because she agreed to take the program development position at the reduced salary, it would not have been any more expensive for Access to employ her rather than Denson.

To defeat summary judgment, Walker must submit evidence that shows or creates a triable issue of fact as to whether discrimination was the real reason for Access's employment action.  See Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 382 (2d Cir. 2001).  To satisfy this burden, Walker may rely on her prima facie and pretext evidence alone, or she may point to other evidence in the record.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49 (2000).[5]

---

[5] While Reeves dealt with a post-verdict motion for judgment as a matter of law, it applies with equal force on a motion for summary judgment.  See id. at 150 (stating that the standard for

12

Here, Walker submits evidence that she was laid off on April
20, 2001, while Denson, a younger and less-experienced employee,
continued to work at Access after the fiscal year ended on June
30, 2001.  However, even when viewed in the light most favorable
to Walker, this evidence is not sufficient to permit a finding
that Access's decision was based, at least in part, on Walker's
age.

Access's decision to lay off Walker and to continue
employing Denson past June 30, 2001, initially as an independent
contractor and later as a full-time employee, does not show that
Access committed impermissible age-based discrimination.  As
discussed supra in Section I.B., the summary judgment record
provides ample support for Access's three reasons for its action.
That is, the record reflects continued financial hardships at
Access -- which are well-documented and have been conceded to by
Walker -- that ultimately required the elimination of the entire
development department.  While Denson remained employed at
Access, her employment was as an independent contractor; she
worked only an average of ten to fifteen hours per week and did
not receive benefits.  In turn, Walker does not argue that she
would have continued to work at Access as an independent
contractor.  In fact, the evidence in the record warrants the
opposite inference because Walker was reluctant to even continue

granting summary judgment mirrors the standard for judgment as a
matter of law, such that the inquiry under each is the same).

13

in the program development position, which carried a lower salary
than she had been making up to November 2000, and which, in her
opinion, constituted a demotion.  The evidence demonstrates that
the terms of the independent contractor position that Denson
worked in were still less attractive.  Thus, a jury could easily
find that it was reasonable for Access to question Walker's
commitment and enthusiasm for returning to work in a position
that was essentially a demotion for her, and that Denson, who was
familiar with ongoing grant writing projects, was a more
attractive employee to retain, regardless of age.  See Reeves,
530 U.S. at 141 (ADEA liability depends on whether age actually
motivated an employer's decision).  Therefore, because the
summary judgment record reveals that Access's reasons fully
explain why Access laid off Walker but decided to retain Denson,
first as an independent contractor and later as a full-time
employee, the court finds that a jury could not reasonably decide
that Access was motivated by impermissible age-based
discrimination.

In reaching this conclusion, the court notes a recent ADEA
case decided in the Second Circuit, James v. New York Racing
Assoc., 233 F.3d 149 (2d Cir. 2000).  In that case, the Second
Circuit affirmed a district court's summary judgment in favor of
the employer.  The plaintiff was 59 years old and had been
employed as the Assistant Security Director for the defendant.
He claimed that he was terminated because of his age.  His

employer stated the plaintiff was terminated because of
downsizing.  However, one week after the plaintiff was fired, the
employer hired a 42 year-old to work in essentially the same
position that the plaintiff had held.  See id. at 152.  Although
the new hire had a different job title and earned a slightly
lower annual salary than the plaintiff had, all other aspects of
the new hire's employment were the same as plaintiff's had been:
the new hire was placed at plaintiff's former desk, he was
assisted by plaintiff's former secretary, and he took over many
of plaintiff's former duties.  The Court found that the plaintiff
established a prima facie case of age discrimination by showing
that he was replaced by a younger person.  See id. at 153.  It
also reasoned that "the [plaintiff's] proffered evidence . . .
could permit a finder of fact to conclude that the employer's
given reason . . . could not adequately explain [the plaintiff's]
removal and might therefore be false."  Id. Nonetheless, the
Court held that despite plaintiff's prima facie and pretext
evidence, the record as a whole could not reasonably support an
inference that the plaintiff's discharge had been motivated by
age-based animus.  See id. at 152, 157.  The Court reasoned that
while hiring a new employee was inconsistent with the employer's
asserted reason for terminating the plaintiff, there was other
evidence that supported the employer's claim -- "a bona fide
reduction in force, motivated by the need to save large amounts
of operating costs."  Id. at 152.  It found that the plaintiff

15

failed to proffer any evidence from which a jury could have inferred that the asserted pretextual reason was intended to mask age discrimination rather than some other permissible basis. <u>Id.</u> at 157.

Likewise, in this case, Walker has not met her burden of producing the requisite evidence. Even though she offers evidence of Denson's continued employment at Access, that evidence alone could not allow a jury to infer that age, and not some other permissible basis, was the real reason for her layoff. <u>See</u> Reeves 530 U.S. at 148 (reasoning that "an employer would be entitled to [summary judgment] if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision). In particular, Walker fails to provide any evidence rebutting the portions of the summary judgment record that substantiate Access's financial problems, it legitimate non-age-based decision to continue Denson's employment, and its conclusion that Walker was neither motivated nor committed to work for Access in a position that was effectively a demotion. <u>Cf. Zimmerman v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 383 (2d Cir. 2001) (affirming a jury's verdict of gender discrimination on the sufficiency of the evidence presented at trial where the plaintiff, who was a female, was fired from her job as an assistant vice-president at a financing services firm, by a new manager, a male, after only two months of working for

him, and finding that the manager "failed to offer a single item of documentary evidence to support [his] assertion that [he] fired [the plaintiff] for inferior performance thus creating a factual dispute from which a jury could have inferred that discrimination was the true reason for the plaintiff's termination). The court cannot find, therefore, that Walker's evidence would permit a jury to reasonably conclude that, more likely than not, Walker's layoff was due to her age. In other words, to the extent that Walker has created an issue of fact as to whether or not Access's loss of funding was the true reason for her layoff, it is only a weak one. See Reeves, 530 U.S. at 147-49. Furthermore, Walker altogether fails to negate Access's other reasoning for its decision, namely that Access questioned Walker's desire to remain at Access, and that it was simply more efficient for Access to retain Denson rather than Walker because of her familiarity with ongoing projects. See id.

II.  ADEA Retaliation

Walker also alleges that Access retaliated against her when it laid her off from the program development position in April 2001 for making an age discrimination complaint to Connor in November 2000. Access contends that Walker's claim fails because there is no evidence from which a reasonable jury could find retaliation. The court agrees.

Walker's retaliation claim is analyzed under the same McDonell Douglas burden-shifting framework used above. See

17

Slattery, 248 F.3d at 94-95.  To establish a prima facie case of
retaliation, Walker must show that 1) she engaged in a protected
activity; 2) Access was aware of the activity; 3) Access took
adverse action against her; and 4) there was a causal connection
between the protected activity and the adverse action which gives
rise to an inference of retaliatory intent.  See id. (citing
cases).  Viewing all factual ambiguities in Walker's favor, the
court finds that Walker fails to establish a prima facie case of
retaliation because there is no evidence of a causal connection
between her complaint of discrimination and her subsequent
layoff.

Access cannot seriously dispute that Walker has established
the first three elements of her prima facie retaliation claim.
First, Walker engaged in a protected activity in November 2000
when she complained to Connor that she was being discriminated
against because of her age.  Second, Access was aware of Walker's
activity by virtue of that complaint.  Third, Walker suffered an
adverse action because she was subsequently laid off from the
program development position in April 2001.

Nonetheless, a jury could not find the requisite causal
connection between Walker's complaint and her layoff.  Walker's
only evidence for finding such a connection is time.  She argues
that her April 2001, layoff followed her November 2000, complaint
of age discrimination closely enough to support an inference of
retaliation.  While temporal proximity can demonstrate a causal

18

connection, the specific facts of this case do not permit such a finding.  In particular, the record demonstrates that Access had financial difficulties which began nearly a year before Walker's April 2001, layoff.  In fact, Access's loss of funding resulted in two layoffs in July 2000.  Additionally, the record indicates that just days before Walker was laid off, Access lost a major services contract with Generations.  Based on that loss, Access decided to eliminate the entire development department, which included the program development position that Walker had accepted.

"Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  Id. at 95.  The Slattery Court held that the plaintiff's filing of an age discrimination complaint was not causally connected to either his subsequent probation, which occurred eight months after his complaint, or his ultimate termination, which occurred another seven months after that.  Instead, the Court found that the adverse employment actions were "both part, and the ultimate product, of an extensive period of progressive discipline which began . . . a full five months prior to [the plaintiff's] filing of the [discrimination] charges."  As in Slattery, Walker fails to establish a factual dispute that the April 2001 layoff was not part and parcel of an extensive period of financial difficulty at Access, but rather was based on

19

retaliatory animus for her previous discrimination claim.  Apart
from temporal proximity, Walker does not base her ADEA
retaliation claim on any other argument.  Therefore, the court
grants summary judgment in favor of Access on this issue as well.

III. <u>FMLA Retaliation</u>

Walker also claims that the April 2001, layoff was in
retaliation for taking medical leave from December 2000, to
February 2001.  Access contends that this claim must fail because
a reasonable jury could not conclude that Walker's leave played a
part in Access's decision to lay her off.  The court does not
agree.

Under the FMLA, employees are entitled to twelve weeks of
leave each year to treat a serious illness or to care for family
members.  <u>See</u> 29 U.S.C. § 2612.  The Act guarantees reinstatement
of employment upon the end of an employee's leave.  <u>See</u> <u>id</u>. at
§ 2614(a).  Section 2615(a)(1) of the FMLA makes it unlawful for
employers to interfere with, restrain, or deny the exercise of or
the attempt to exercise, any right that it provides.  Further,
§ 2615(a)(2) prohibits employers from discharging or in any other
manner discriminating against any individual for opposing any
practice made unlawful by the FMLA.

Here, Walker's complaint alleges that after taking medical
leave she was terminated.  However, Walker's moving papers
indicate that she is unsure whether her FMLA claim should proceed

under subsection (a)(1) or (a)(2). The court finds that Walker's FMLA claim is properly interpreted as one of retaliation under § 2615(a)(2). See Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001)(reasoning that § 2615(a)(1) deals with the interference of an employee's exercise of FMLA rights rather than with an employer's retaliation for the exercise of those rights). Because the intent of an employer is material in FMLA interference claims, the McDonnell Douglas analysis applies. See Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004).

Viewing the facts in the light most favorable to Walker, the court finds that Walker has established a prima facie case of retaliation. That is: 1) Walker's leave was taken in accordance with the FMLA; 2) she was qualified for the program development position; 3) she was laid off and therefore suffered an adverse employment action; and, 4) retaliatory intent can be inferred because the layoff occurred just weeks after the end of her medical leave. See id.

Indeed, under 29 C.F.R. § 825.220(c), which was promulgated pursuant to the FMLA, an employer cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions. Here, Access readily concedes that it decided to layoff Walker and retain Denson, in part, because Denson had been working in the position throughout Walker's leave and was well-acquainted with existing projects that needed to be completed by the end of June 2001. Based on

21

that concession, a jury could find that Access used Walker's
leave as a negative factor in its decision to lay her off.  That
is, the record reflects a factual dispute as to whether Access
would have laid off Walker and retained Denson had Walker not
taken the medical leave.  While the court notes that under
§ 2614(b)(1) of the FMLA an employer may deny restoration to an
employee, inter alia, when "necessary to prevent substantial and
grievous economic injury to the operations of the employer," the
court finds that Walker has nonetheless established a question of
fact that must be decided by a jury.  Accordingly, summary
judgment must be denied in favor of Walker on this issue.

IV.   <u>Negligent Infliction of Emotional Distress</u>

Finally, Access moves for summary judgment on Walker's claim
of negligent infliction of emotional distress ("NIED").  Walker
alleges that she suffered emotional distress, embarrassment,
humiliation, and anxiety as a result of her layoff.

In the employment context, NIED arises only where it is
based upon the defendant's unreasonable conduct in the
termination process.  See <u>Parsons v. United Techs. Corp.</u>, 243
Conn. 66, 89 (1997).  The dispositive issue is whether the
employer's conduct "was sufficiently wrongful that [it] should
have realized that its conduct involved an unreasonable risk of
causing emotional distress," which, if caused, could result in
illness or bodily harm.  <u>Perodeau v. City of Hartford</u>, 259 Conn.

729, 751 (2002)(internal quotes and citation omitted).  However, the mere termination of employment, even where it is wrongful, is not by itself sufficient to sustain a claim for negligent infliction of emotional distress.  See Parsons, 243 Conn. at 88-89.  In other words, firing an employee does not transgress the bounds of socially tolerable behavior.

Here, Walker points to four specific occurrences which she argues Access should have known were likely to cause her an unreasonable risk of emotional distress:  1) Connor informing Walker that her position as Director of Economic Development had been eliminated and that her duties would be given to Denson, a younger employee; 2) Connor's November 28, 2000, letter to Walker confirming that the economic development position had been eliminated; 3) Connor's statement to Gregonis that she did not believe Walker was actually sick and that she had gone on medical leave merely for financial purposes; and 4) Denson's continued employment at Access.

Even when taken in the light most favorable to her, the facts that Walker puts forth would not allow a reasonable jury to infer that Access acted egregiously.  The first two incidents are wholly acts of termination which, despite Walker's claim that they were not only unwarranted but in fact unlawful, are not cognizable in an NIED claim.  See id.  The latter two incidents -- Connor's statement to Gregonis and Denson's continued employment at Access -- are also not actionable as NIED claims

23

because they do not deal with Access's treatment of or conduct towards Walker.  In any event, it is clear that none of the incidents that Walker points to were extreme or outrageous.  <u>See,</u> <u>e.g.</u>, <u>Miner v. Town of Cheshire</u>, 126 F. Supp.2d 184, 197 (D. Conn. 2000) (reasoning that because emotional distress in the workplace is not uncommon, courts do not lightly intervene to impair the exercise of management discretion and have thus attempted to keep a tight rein on the expansion of NIED claims in the employment context, limiting them to instances of unreasonable conduct) (citing cases).  Accordingly, summary judgment is granted in favor of Access on this claim as well.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [dkt. # 22.] is GRANTED as to the plaintiff's age discrimination, retaliation for an age discrimination complaint, and negligent infliction of emotional distress claims, but is DENIED as to plaintiff's FMLA retaliation claim.

So ordered this 24 day of August, 2004, at Bridgeport, Connecticut.

Alan H. Nevas
Senior United States District Judge